## HARRY B. DAVIS V. CITY OF OMAHA.

FILED APRIL 7, 1896.    No. 6460.

1. **Municipal Corporations: STREETS: SIDEWALKS.** The fee of the streets of the municipalities of this state is vested in the municipalities themselves; and the sidewalks of the various municipal corporations are parts of the streets thereof.

2. ———: ———: ———.  The law of this state devolves upon the various municipal corporations thereof the duty of at all times keeping their streets and sidewalks in a reasonably safe condition for travel by the public, and no municipal corporation, by any act of its own, can devolve this duty on another so as to relieve itself from a liability resulting from its failure to perform such duty. *City of Omaha v. Jensen,* 35 Neb., 68, and *City of Beatrice v. Reid,* 41 Neb., 214, followed.

3. ———: ———: ———.  The law does not make it the duty of a lot owner to build, maintain, or repair the sidewalks—being part of the streets—in front of his premises.

4. ———: ———: ———.  A municipal corporation may employ such agency as it sees fit in the construction or repair of its streets and sidewalks, and may license or permit a lot owner to build or repair a sidewalk in front of his premises under its direction.

5. ———: ———: ———.  A general permission or license given by a city to a lot owner to build or repair a sidewalk on his premises will continue until revoked by the city, either expressly or by such conduct on its part as authorizes an inference of revocation.

6. ———: DEFECTIVE SIDEWALKS: DAMAGES: LIABILITY OF CITY. If a lot owner be licensed by a municipal corporation to build a sidewalk in front of his lot, which walk it is the duty of the corporation to build and maintain, and in the performance of such work the lot owner negligently leaves an obstruction in the street which causes an injury, the city is liable therefor.

7. ———: ———: ———: ———: NEGLIGENCE. A municipal corporation may be liable for an injury caused by an obstruction placed in its streets by a mere trespasser, but to make it liable in such case it must be shown to have been guilty of negligence in the premises.

8. ———: SIDEWALKS: ORDER TO BUILD: OBSTRUCTIONS BY
   LOT OWNER: PERSONAL INJURIES: LIABILITY OF CITY.   A
   municipal corporation notified a lot owner to construct a
   permanent sidewalk in front of his lot within a time
   specified and that in default of his so doing the corpo-
   ration would build the walk and assess the cost thereof
   to the lot.   The lot owner did nothing towards building
   the sidewalk within the time specified.   Afterwards, with-
   out the knowledge or permission of the municipal corpo-
   ration, the lot owner proceeded to build the walk and for
   that purpose on an afternoon deposited a number of flag-
   stones in the street opposite his lot and left them there
   without barriers or signals.   The night following the
   afternoon of the deposit of said flag-stones a traveler
   was injured by coming in contact with them, and sued
   the municipal corporation for damages.   *Held*, (1) That it
   was the duty of the municipal corporation, and not the
   duty of the lot owner, to build and maintain the sidewalk;
   (2) that the municipal corporation had the right to per-
   mit or license the lot owner to build the walk; (3) that
   the notice given by the municipal corporation to the lot
   owner to build the walk was merely a license or permis-
   sion to him to do so in the time specified; (4) that the
   license given was not a general or continuing one, but
   conditioned and limited to the time therein fixed; (5) that
   the lot owner, in the construction of the walk after the
   license from the municipal corporation had expired, was
   not acting either as the agent, employe, or licensee of the
   municipal corporation, but was a mere trespasser in the
   streets; (6) that as the municipal corporation had no
   knowledge that the lot owner had done anything towards
   constructing the walk before the happening of the injury
   sued for, and as the evidence disclosed no negligence on
   its part in the premises, it was not liable for the injury.

ERROR from the district court of Douglas
county.   Tried below before SCOTT, J.

The facts are stated by the commissioner.

*E. R. Duffie* and *John D. Howe*, for plaintiff in
error:

The city is directly responsible for the unsafe
condition of the street.   It was the duty of the

city to construct the sidewalk in front of the lot where the accident occurred. This duty could not be imposed upon the owner of the property. A public duty cannot be imposed upon a private citizen, and any ordinance or statute which seeks to reach such a result is unconstitutional. (Elliott, Roads & Streets, 539; *Noonan v. City of Stillwater,* 33 Minn., 198; *Gridley v. City of ·Bloomington,* 88 Ill., 554; *City of Keokuk v. Independent District of Keokuk,* 53 Ia., 352; *City of Cincinnati v. Stone,* 5 O. St., 38.)

The city was negligent in not discovering the dangerous condition of the street and providing means to warn the public of such dangerous condition. (*Pettengille v. City of Jonkers,* 116 N. Y., 558; *Glasier v. Town of Hebron,* 131 N. Y., 447; *Brusso v. City of Buffalo,* 90 N. Y., 679; *Detroit & M. R. Co. v. Vansteinburg,* 17 Mich., 99; *City of Beatrice v. Reid,* 41 Neb., 214.)

*W. J. Connell* and *E. J. Cornish, contra.*

In reply to the first contention of plaintiff in error reference was made to the following cases: *Hill v. City of Boston,* 122 Mass., 344; *City of Rahway v. Carter,* 26 Atl. Rep. [N. J.], 96; *Fort Smith v. York,* 52 Ark., 84; *Winbigler v. City of Los Angeles,* 45 Cal., 36; *Hewison v. City of New Haven,* 37 Conn., 475; *Aldrich v. Inhabitants of Gorham,* 77 Me., 287; *City of Detroit v. Putnam,* 45 Mich., 263; *McKeller v. City of Detroit,* 57 Mich., 158; *McArthur v. City of Saginaw,* 58 Mich., 357; *Eastman v. Meredith,* 36 N. H., 284; *Sweeney v. City of Newport,* 65 N. H., 86; *Pray v. Jersey City,* 32 N. J. Law, 394; *Wild v. City of Patterson,* 47 N. J. Law, 406; *Wixon v. City of Newport,* 13 R. I., 454; *Young v. City of Charleston,* 20 S. Car., 116; *Welsh v. Rutland,* 56 Vt., 228; *Wil-*

*kins v. Rutland,* 61 Vt., 336; *Wiltse v. Tilden,* 77 Wis., 152; *Goeltz v. Ashland,* 75 Wis., 642; *City of Warsaw v. Dunlap,* 112 Ind., 576; *King v. City of Cleveland,* 28 Fed. Rep., 835; *City of Cleveland v. King,* 132 U. S., 295; *Hiner v. City of Fond du Lac,* 36 N. W. Rep. [Wis.], 632; *City of Omaha v. Ayer,* 32 Neb., 375.

In reply to the second contention of plaintiff in error the following cases were cited: *Dittrich v. City of Detroit,* 57 N. W. Rep. [Mich.], 125; *Reed v. City of Detroit,* 58 N. W. Rep. [Mich.], 44; *Davis v. City of Kingston,* 5 N. Y. Supp., 506; *Butler v. Town of Oxford,* 13 So. Rep. [Miss.], 626.

RAGAN, C.

Harry B. Davis brought this suit to the district court of Douglas county against the city of Omaha, the city being a municipal corporation existing under the laws of the state as a city of the metropolitan class, to recover damages which he alleged he had sustained by reason of injuries which he had received through the negligence of the city. At the close of the evidence the jury, in obedience to an instruction of the court, returned a verdict for the city. Judgment of dismissal of Davis' case was rendered upon this verdict, and he prosecutes here a petition in error.

The undisputed facts, so far as the same are material to this opinion, are: That Judge Doane owned a lot fronting on Seventeenth street, in said city; said street was one of the public thoroughfares of the city and used and traveled by the public as such. On the 3d of May, 1892, the authorities of the city, by resolution, ordered a plank sidewalk in front of Judge Doane's premises to be replaced by a permanent one, and gave

notice to Judge Doane that unless he constructed such sidewalk within five days from the date of the service on him of said notice it would construct the sidewalk and assess the costs thereof to his property. On the 31st of May, 1892, the five days within which Judge Doane was to construct the sidewalk expired and he had not at that time done anything towards constructing it. The city thereupon notified Judge Doane to designate the kind of material of which he desired the sidewalk to be constructed. On the 9th of July, 1892, the city ordered the city contractor to lay an artificial stone sidewalk in front of Judge Doane's premises, but this was not done. On the 15th of October, 1892, Judge Doane began the construction of the sidewalk of Bandera stone in front of his lot; and in the prosecution of this work, and in the afternoon of said day, his employe hauled and deposited in the street, outside the curb in front of said lot, a number of large flag-stones. During the night of said 15th of October Davis was driving on this street in a buggy and it ran against these stones, was partially overturned, he was thrown out and injured. No barriers had been erected to prevent the traveler from coming in contact with these stones, nor had any signals been displayed to warn him of their presence. On the 15th of October, 1892, the city did not know that Judge Doane was proceeding to build the walk in front of his premises. On the 4th of November, 1892, the city, being still in ignorance that Judge Doane had built the sidewalk in front of his premises, ordered the city contractor to build a walk there of Indiana stone. Judge Doane testified on the trial as follows:

Q. State if in the fall of 1892 you received an

order from the city officials that a permanent sidewalk had been ordered laid in front of that property.

A. Yes, sir; I received a notice in the fall, but I had several previous notices to lay the walk, and what time the notice was served I can't now recollect, but having a good plank sidewalk there I concluded I wouldn't pay any attention to the notice, but afterwards in the fall, just what time I cannot tell, I received a blank containing prices of stone, kinds of stone the city had a contract for, and notifying me to select from that such stone as I desired laid.

Q. Well, then what did you do?

A. Then I went on and made the contract with a stone man to lay the walk myself.

Q. So you laid it yourself after having received this order?

A. Yes.    *    *    *

Q. Laid it under the order of the city?

A. Yes, sir.

Cross-examination:

Q. You may state whether or not in laying that walk or making your contract you acted under the directions or control in any manner of the city of Omaha?

A. Nothing further than under the directions they had given me to lay the walk.

Redirect examination:

Q. Never molested you in carrying out that order?

A. No, rather insisted upon its being carried out, rather more than I thought they would do.

Under this evidence the learned district court was of opinion that Davis could not recover against the city, and we agree with him. The fee

of the streets of the municipalities of this state is vested in the municipalities themselves, and the sidewalks of the various municipalities are parts of the streets thereof. We know of no statute of this state, nor of any ordinance of the city of Omaha, which makes, or attempts to make, it the duty of a lot-owner to build, repair, or maintain the sidewalks adjoining his property. Without quoting the statutes under which the city of Omaha exists it may be safely said: That that corporation, as the other municipal corporations of the state, is, by law, charged with the duty of at all times keeping its streets and sidewalks in a reasonably safe condition for travel by the public; and that no municipal corporation, by any act of its own, can devolve this duty on another so as to relieve itself from a liability resulting from its failure to perform such duty. (*City of Omaha v. Jensen*, 35 Neb., 68; *City of Beatrice v. Reid*, 41 Neb., 214.) And in the case at bar, if Doane was acting for the city, either as its agent, employe, or contractor, or with its knowledge and permission, then his acts in and about the construction of the sidewalk in front of his premises became and were the acts of the city; and if his placing and leaving the flag-stones in the street in the manner in which they were placed and left was negligence, which caused an injury to Davis, he being free from negligence, we have not the slightest doubt but the city would be liable to Davis for such injury. (See the cases cited above, and *Stephens v. City of Macon*, 83 Mo., 345.)

But what were the relations existing between Doane and the city of Omaha at the time the injury sued for occurred, and at the time the flagstones were placed in the street which caused such

injury?    Section 69 of chapter 12a, Compiled Stat-
utes,—part of the charter of the city of Omaha,—
so far as the same is material here, is as follows:
"The mayor and city council shall have power
*  *  *  to construct and repair, or cause and
compel the construction and repair of sidewalks
in such city, of such material and in such manner
as they may deem proper and necessary;  and to
defray the costs and expenses of improvements, or
any of them, the mayor and council of said city
shall have power and authority to levy and collect
special taxes and assessments upon the lots and
pieces of ground adjacent or abutting upon the
streets, avenues, alleys, or sidewalks thus in whole
or in part  *  *  *  constructed or otherwise
improved or repaired, or which may be specially
benefited by any of said improvements;  *  *  *
*Provided further*, That in case the grade of any
street or part of street used by the public shall not
have been established or in any case any street or
part thereof shall not have been worked to grade,
then and in such case the owner or owners of any
lot or lots or lands abutting on such streets or por-
tions of streets as aforesaid shall only be required
to construct or repair the sidewalk along such
street or part thereof with plank as the council
may direct," etc.   As we read this statute it does
not make or attempt to make it the duty of a lot-
owner to build, maintain, or repair the sidewalks
on his premises;  but this statute, and others not
quoted, devolve upon the municipal corporation
the control of all of its streets and alleys and the
duty of paving, grading, and maintaining its
streets, building and maintaining and repairing
its sidewalks.   What means the city may employ,
what agencies it may engage in the performance

of these duties, is left by the legislature to the city authorities. To reimburse itself for the expense of building and maintaining sidewalks in front of lots the municipal corporation is invested with the power and authority to levy and collect special taxes and assessments upon the lots in front of which the sidewalks are built and maintained. True, the statute quoted says that on certain streets lot-owners shall only be required to construct or repair the sidewalks with plank as the council may direct; but this statute falls far short of imposing, or attempting to impose, on a lot-owner the duty of building, maintaining, or repairing the sidewalks adjoining his property.

As already stated, on the 3d of May, 1892, the city authorities notified Doane that the plank sidewalk in front of his premises must be replaced by a permanent one, and also notified him that unless he should build such permanent walk within five days after the service of that notice upon him, that it, the city, would at once proceed to construct such permanent sidewalk. This action of the city was in conformity with its ordinances; and we think the statute, under which the city exists, authorizes the passage of such ordinances. The city, in giving notice to Doane to construct a permanent sidewalk upon his lot, simply licensed him to furnish the material and construct that walk, in accordance with the ordinances of the city, instead of paying the taxes and assessments which the city might levy on the lot to pay the cost of constructing the walk; in other words, Doane became and was a mere licensee of the city; and had he proceeded with the construction of this walk within five days after the service upon him of the notice to construct the walk, then

we have no doubt that he would have been acting in that manner for and in behalf of the city; and for his negligence in constructing the walk, if he was guilty of negligence, the city would have been liable. (*Stephens v. City of Macon*, 83 Mo., 345.) It is doubtless true that an agency once established is presumed to continue until it is shown to have ceased; and we have no doubt that a general permission or license, given by a city to a lot-owner to build or repair a sidewalk on his premises, will continue until revoked by the city, either expressly or by such conduct on its part as would authorize an inference of revocation. In the case at bar the city, in effect, said to Doane: We have determined that the plank sidewalk in front of your premises shall be replaced by a permanent one. We have the authority to build this walk and charge the expense of it to your property, but we give you permission to construct the walk yourself, in accordance with the ordinances of the city, provided you do it within a certain time. The permission then given Doane was coupled with a condition that the work which he was permitted to do should be undertaken by a certain time, and the failure of Doane to avail himself of the permission given, in the time fixed, worked a revocation of such license. But again, after the license given Doane to construct the sidewalk had expired by its own limitation, he was requested by the city to designate the kind of material out of which he desired the walk constructed. Here, then, was an additional notice given Doane by the city that it had revoked the permission given him. Doane, in whatever he did towards constructing this sidewalk, after the time fixed by the city council in which he might construct it, so far as

this record shows, was a mere trespasser. A lot-owner, because such, has no authority to tear up the sidewalks in front of his premises or to replace them with others. We reach the conclusion, therefore, that the evidence in the record shows that at the time the accident in question happened, and at the time the flag-stones which caused the accident were placed in the street by Doane, he was neither the agent nor the licensee of the city. The city of Omaha is, however, none the less liable in this case for the injury sustained by Davis, if it knew prior to the accident of the existence in the street of these flag-stones; or if they had remained in the street such a length of time prior to the accident as to sustain a finding that the city, by the exercise of ordinary care, could have known of their existence, and was guilty of negligence in not so knowing. The flag-stones which caused Davis' injury were left in the street in the afternoon of the night he was injured. The record does not show that any officer of the city knew of the existence of these flag-stones in the street, or that Doane was building the sidewalk prior to the time the accident occurred. The burden of showing that the city was guilty of negligence in not knowing of the presence of the flag-stones in the street was upon Davis. It does not appear from the record that these flag-stones were deposited in a part of the street used for business purposes, nor in a part of the street which was so constantly used and traveled as to make it negligence *per se* for the city officials not to know of their existence during the short time that intervened between their being left in the street and Davis' being hurt. The judgment of the district court is

AFFIRMED.