JOHN McKELLER v. THE TOWNSHIP OF MONITOR.

*Negligence—Public highways—Proximate cause of injury—Bridges —Notice of defect to township—Contributory negligence— Charge to jury—Statutory construction.*

1. Where, by the breaking of a bridge which a township had failed to keep in repair, the water and steam from a boiler attached to an engine which the owner is hauling over the bridge escapes, and injures his horses, the breaking of the bridge is the proximate cause of the escape of the steam and water, and if the township is otherwise liable it is liable for such damage.

2. Where, in a suit for damages sustained by reason of the breaking of a bridge-stringer, the jury find that to all outward appearance the stringer was sound, but was rotten internally, in the absence of personal knowledge on the part of the proper officers of the hidden defect, the question for the jury is whether said officers used due diligence in discovering such defect, and neglected to do that which common prudence and caution required them to do to ascertain the true condition of the stringer. *Medina v. Perkins*, 48 Mich. 67; *Blank v. Livonia*, 78 Id. ——.

3. In charging a jury in a negligence case the court should distinguish between the negligence which *caused* the injury and that which *contributed* to it.

4. The first clause of section 4 of Act No. 264, Laws of 1887, which provides a remedy for the failure of townships to keep highways in repair, limits the right to bring suit under the first and second sections of the act, for personal injury and injury to property, to public highways which have been in use for *ten* years.

5. The duty imposed upon townships by section 3 of Act No. 264, Laws of 1887, to keep their highways in reasonable repair, etc., may be enforced by information or indictment where the highway has *not* been used as a public highway for *ten* years, but a personal action for damages will not lie in such cases.

Error to Bay. (Cobb, J.) Argued November 14, 1889. Decided December 28, 1889.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*A. McDonell,* for appellant, contended:

1. The measure of damages is the difference between the real value of the horses before and after the injury; citing *Davidson v. Railroad Co.*, 49 Mich. 428.

2. The court erred in not distinguishing between the diligence that should be exercised in case of a seldom-traveled side road, and a main one which is constantly thronged; citing *Medina v. Perkins*, 48 Mich. 67.

3. If the wrong and the resulting damage are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the dam-

age are not sufficiently conjoined or concatenated as cause and effect to support the action; citing Addison, Torts, 6; *Marble v. Worcester*, 4 Gray, 395; *Anthony v. Slaid*, 11 Metc. 290; *Silver v. Frazier*, 3 Allen, 382; Cooley, Torts, 69.

4. According to the ordinary course of events, it cannot be said that the township had notice that people driving teams over that bridge carried steam and boiling water in their vehicles, which would naturally scald the team in case of a defect in the bridge. In any event it would be a question for the jury; citing *Fairbanks v. Kerr*, 70 Penn. St. 86-91; *Alston v. Herring*, 11 Exch. 822; *Harrison v. Berkley*, 1 Strob. 529.

*Hatch & Cooley*, for plaintiff, contended:

1. The recent decisions of this Court sustain the charge; citing *Medina v. Perkins*, 48 Mich. 67.

2. Previous knowledge of the township officers should be taken into account; citing *Woodbury v. Owosso*, 64 Mich. 239; and a liability may arise in the absence of such knowledge, a want of which may, under given circumstances, imply want of due care; citing *Stebbins v. Keene*, 60 Mich. 214; *Dotton v. Albion*, 50 Id. 129.

3. Locomotives haul hot water over the country. This Court has decided that a self-propelling agricultural steam-engine has a right to go along a highway; citing *Macomber v. Nichols*, 34 Mich. 212.

CHAMPLIN, J.   A public highway in the township of Monitor crosses Culver creek upon the section line between sections 20 and 21.   About nine years before the accident below mentioned, a bridge had been erected over the creek, and has been maintained there since.   On September 22, 1887, the plaintiff was hauling a steam-boiler filled with hot water, and steam-engine attached, with a span of horses over this bridge.   On nearing the south end, he drove so far to the east side that the whole weight of the load rested upon the east stringer, which broke, and the load and horses were precipitated into the creek. The fall broke one of the try-cocks off from the boiler, and the hot water and steam escaped, and came in contract with the horses, and injured them by scalding.   The

horses also suffered other injuries.    The same engine and boiler had been drawn over the bridge about two weeks before, and had again crossed the bridge in the forenoon, and plaintiff was on his return when the accident occurred.

The defendant's counsel requested the court to instruct the jury that the township was not liable for damages arising from injury to the horses from the scalding of them by the hot water and steam, and also that it was negligence on the part of the plaintiff to have hot water or steam in the boiler.    The court refused this request, but instructed the jury as follows:

" Some discussion has been had in your presence of the proposition that defendant is not liable for any damage done to the horses by the steam or hot water, but only for such other damages as were done,—the straining and scratching.  But I charge you that, if the defendant is liable at all, it is liable for that damage as well as the rest.  The plaintiff was under no obligation to empty his boiler before he started, and he had a right to a road on which he could safely travel with it as it was."

The question is a very close one, but we think that the breaking of the bridge was the proximate cause of the escape of the steam and water from the boiler, and that, if defendant is liable in other respects, it is liable for the damage caused by the escape of the steam and hot water.

There was evidence which tended to show that the stringer which broke was rotten, and had been in place about nine years.    It was a red oak stick 11 inches in diameter, and when the accident occurred was still enveloped with bark.  Some of the witnesses testified that it was very rotten, from an inspection of it after the accident, and one testified that it was rotten in the center, but was sound to the depth of an inch or more around the outside.    The overseer of highways testified that he

inspected or examined this stringer about two weeks before the accident, and that it appeared to be sound, and he did not discover any defects therein. There was no direct testimony of actual knowledge or notice to the township of the defect in question.

The circuit judge charged the jury as follows:

"But another witness, who was the overseer of highways of the township, says that at a certain time he examined the bridge, and examined this particular stringer, and he has told you what he found. I do not recollect myself the exact time that he says he made this examination, but you will probably recollect it. In your judgment, did that overseer then find the bridge to be reasonably safe and fit for travel? If not, he then and there had notice; that is, if the bridge was then unsafe and unfit for travel, and he was there for the purpose of making an examination, and did make an examination, as he says, of course the township then and there had notice that it was unsafe and unfit for travel. I say, if that was so, and he was making that examination, he had that notice, and so the town had. If this timber was so rotten as to be unsafe at the time of the accident, then was it probably safe and sound at the time he saw it? Was it possible for the timber to be as safe as he says it was when he saw it, and then to be as rotten as the other witnesses say it was when it broke? Is it possible that the stick was then rotten, or that it was then sound? Was his examination careful and thorough? If you come to the conclusion that the stick was sound when he saw it, then it follows, of course, that from that examination he got no knowledge or notice that would bind the township,—no notice or knowledge of any unsoundness. But, if it was then rotten, he ought to have found it out, and it was negligence in him, and it was negligence in the township, not to find it out. If the stick was rotten, and he examined it for rot, he and the township had notice of its rottenness, whether he found it or not. If an oak log of that size, and exposure to view, is so rotten as to be unsafe for use, anybody that exercises ordinary prudence and care and good judgment can find it out, if he tries."

The circuit judge in this portion of his charge pretty

effectually impeached this witness, and we think lost sight of the other testimony that to appearances the stringer was sound upon the surface. If the jury believed that it did so appear upon the surface, then, in the absence of actual knowledge or notice, the question would be whether they had used due diligence in discovering the defect, and neglected to do that which common prudence and caution required them to do to ascertain the condition of the timber. *Blank v. Township of Livonia,* 78 Mich.—(44 N. W. Rep. 157); *Township of Medina v. Perkins,* 48 Mich. 67 (11 N. W. Rep. 810).

It was claimed that the plaintiff was guilty of contributory negligence in driving so heavy a load too far to the east side of the bridge. The circuit judge held that, if he did so unnecessarily,—and he left the facts to them to determine under the testimony,—he was guilty of negligence; and if they found that the injury occurred through his negligence, and not through the negligence of defendant, he could not recover. He nowhere instructs them that if they found defendant was negligent, and such negligence caused the injury, the plaintiff could not recover if his own negligence contributed to the injury. We think the jury may not have understood the court upon the question of plaintiff's negligence, as he failed to distinguish between negligence which caused the injury and negligence which contributed to it.

The court was requested to charge the jury that, unless they found that the road in question was used as a public highway for 10 years before the accident, they could not give a verdict for the plaintiff. The court, after repeating this request, said ·

I charge you that that is not the law, and that you have no question of that kind to consider at all."

Section 4 of Act 264, Laws of 1887, reads as follows:

"The provisions of this act shall not apply to public highways which have not been in use ten years; but nothing in this section shall be construed as exempting townships, villages, and cities from maintaining their streets, bridges, sidewalks, cross-walks, and culverts, and the approaches to bridges, in a safe condition for public travel."

The act comprises six sections. The first gives a remedy to any person who has sustained bodily injury upon any public highway by reason of the neglect to keep the same in reasonable repair. The second gives a remedy to the owner of any animal or other property which receives injury by reason of the neglect by any township, etc., to keep the highway in repair. The third section enjoins the duty upon townships, etc., to keep in reasonable repair the highways, etc. The fourth section has been quoted above. The fifth confines the remedies for injuries received from the neglect to keep the highways in repair to those given by the act, and abrogates all common-law liability. The sixth repeals certain former statutes.

A correct interpretation of the fourth section requires us to hold that the first clause of the fourth section withholds the remedy given by the first and second sections as to all public highways which have not been in use 10 years; at the same time, by the latter clause, the duty imposed by section 3 applies to all highways, whatever the length of time they have been in use as public highways. This duty can be enforced by information or indictment, but a suit for redress for injuries received for such neglect by a private person cannot be maintained unless the highway has been in use as a public highway 10 years. This remedy did not exist in Michigan until it was given by this statute, and the Legislature, in bestowing a new remedy, may surround it with such restrictions

as they deem proper.* Except as noted above, the charge was a very clear and fair statement of the law.

For the errors mentioned the judgment will be reversed, and a new trial granted.

The other Justices concurred.